Good morning. May it please the court, Belinda Escobosa-Helzer on behalf of plaintiff appellant Benito Acosta. With the court's permission, I'd like to reserve two minutes for rebuttal. OK, keep an eye on the clock. That's the total amount of time that you have. Thank you. As the court knows, there are seven issues here on appeal. With my time, however, I'd just like to focus on Mr. Acosta's facial challenge to Costa Mesa's rule of decorum, section 261, and then briefly address the district court's errors in granting summary judgment in favor of the police officers. Of course, if the court has any other questions, I can answer those as well. Let's start with the facial challenge. Mr. Acosta's facial challenge to section 261 is essentially a fight about white versus city of Norwalk. And whether Costa Mesa can fit its role within white's holding, it cannot. Essentially, Costa Mesa seeks to fit a square peg into a round hole. Unlike in white, the court struck a balance between two competing interests that sometimes present themselves at city council meetings. One is the interest of the public to express their thoughts, opinions, and criticisms to the people who govern their city and balance that with the city's right to proceed with its business. Here, section 261 does exactly what the white court found to be unconstitutional. It punishes pure speech. Unlike the rule in white, Costa Mesa does not construe 261 to reach only conduct. Now, on appeal, citing to the principle of constitutional avoidance, the city asked this court to accept that Costa Mesa construes 261 exactly like the city of Norwalk construed its rule in white. There's two problems with that. One is, although it's undisputed that 261 can be read to be unconstitutional, there's no evidence in the record that Costa Mesa construes 261 to be so narrow. In fact, the fact that you say in the record, but I thought we had instructions to the jury that they couldn't find that there was a constitutional violation unless the conduct was found to have disrupted the meeting. Yes, Your Honor, but here the facial challenge was dismissed at the 12B6 stage. So what the court is asked in this appeal on this issue to address is whether, on its face, the rule 261 can be construed to reach only behavior. But isn't that how the district court construed it in awarding summary judgment to the city in rejecting your facial challenge? No, Your Honor, the district court considered Mr. Acosta's facial challenge at the 12B6 stage. So before any discovery had been conducted on this case, the district court looked at 261 and looked at the rule of decorum in white and determined that they were similar enough that 261 survived a facial challenge and dismissed Mr. Acosta's claim. But isn't that akin to saying that there has to be some disruption? Because that's what we said the ordinance meant in white. And so if the district court concluded that this ordinance was close enough to the city ordinance in Norwalk, doesn't that necessarily implicitly decide that it has to be limited to those circumstances where the speech causes actual disruption? Well, Your Honor, there's two reasons why the district court's ruling that 261 was like white and therefore constitutional in its face. One reason, and most significantly, is that the city does not construe its ordinance to reach only conduct. It construes its ordinance to reach pure speech. And here in the record at page 234 and 235, as well on pages 248 and 249, then police chief John Hensley testified that engaging in profanity would be a violation of the code, and that individuals are not to make any personal, impertinent, or insulting remarks either to a council member or to any member of the audience. So here, unlike the city of Norwalk, who narrowly construed their ordinance to reach only behavior, Costa Mesa authoritatively construes its rule to reach pure speech, regardless of whether the person engaging in that speech acts in a way that actually disrupts or impedes the meeting. In the language, I'm sorry. Go ahead, counsel. Go ahead. The language, part of it in the section we're talking about says, no person shall yell at the council in a loud, disturbing voice. Do you think that's unconstitutionally, that's unconstitutional? No, Your Honor. The part, the offensive part of Rule 261 is the provision in Section B1 that makes it a crime for any person who makes any personal, impertinent, profane, insolent, or slanderous remarks. So it's OK to tell them they can't yell at the council in a loud, disturbing voice? Correct. But you can't tell them that they're not allowed to make insolent, impertinent, profane, or slanderous remarks? Yes. And for one significant reason. Now, yelling may cause a disruption of the meeting. And the disruption is still an element that's necessary in order to bar someone for their audience before you. It doesn't say it will disturb. It says in a loud, disturbing voice. Aren't all these things kind of ambiguous? Well, I don't know what yell means, what is yell. Am I yelling now? It sounds like it. No, Your Honor. Absolutely. I take your point. And this is one of the issues with facing ordinances and trying to fit them squarely within the ordinance in white. The ordinance in white was different on its face. The plain language was different. That made it susceptible to a narrowing construction. Here, not only does the city of Costa Mesa authoritatively construe its ordinance to go beyond behavior that disrupts a meeting, it also restricts pure speech. And then to top it off, the plain language of 261, unlike the plain language of the ordinance in white, is not reasonably susceptible to a narrowing construction. Well, let me take you to, I read the California decision, UC Nuclear Weapons Lab Conversion Project versus Lawrence Livermore Labs. There, California says, we reject any rigid formulation of the concept of public forum. We reject it. So it seems to me that if I'm going to reject any rigid formulation, that I have to look at A. And A looks pretty much like all they're trying to do is give up disruptive problems, disturbing or disrupting. So how do I get to where this is facially invalid if I'm supposed to reject any rigid formulation? Your Honor, if I may, I do have an A to help the court where I've put white and 261 side by side. So the court can really see the difference between the two ordinances and why Costa Mesa's is not susceptible. Well, but just a minute. I understand what White says, and I understand what we've got here. But again, if I'm to reject any rigid formulation, it seems to me that this statute is pretty much on point. I don't have to look at B. B is just limited, including but not limited to. I just look at A, disorderly, incident, or disruptive. If I don't make a rigid interpretation looking about insolent, I can approve this statute on its face. Well, actually, Your Honor, I would respectfully disagree. Subsection A of 261 is quite different than subsection B. Well, I understand that. But A, the only reason that we're in this is because B is including but not limited to. What we've got here is A. A says what the presiding officer may do. But the court can't ignore the fact that the drafters of 261 went beyond A and also included a provision that made it a crime for people who merely utter personal and pertinent insolent or slanderous remarks. Well, but just a minute. If I read this statute A and B, and I say that A only has disorderly or disruptive behavior, and I take insolent out because I'm supposed to reject any rigid formulation, the only time B, anything in B, would be of any import whatsoever is when it is disorderly or disruptive, which would fit well into White. Well, Your Honor, if I could direct your attention to subsection B6. I got it there. B6 states that no person shall be disorderly, insolent, or disturbing, or disturbing action, speech, or otherwise substantially delay, interrupt, or disturb the proceedings of the counsel. That, Your Honor, that is White. White says that a person cannot act in a way that actually disrupts the meeting. That's also A, if I get rid of insolent. But it does not address the problem in B1. And B1, as a separate provision that has an independent purpose, criminally. Now, but just a minute. This is including but not limited to. And Your Honor, in subsection B, it regardless of whether the presiding officer bars a person from further audience before the counsel, under B, a person can be criminally liable if they violate any of the following rules. And any of the following rules is significant. We have to assume that the drafters knew what they were doing when they drafted section 261. And any of the following rules mean they intended to prohibit and make criminal a person who merely makes personal, impertinent, profane, insolent, or slanderous remarks. You're ignoring the introductory phrase of B, that the presiding officer must first call to order and warn to desist from such conduct. That's right, Your Honor. Which is a backhanded way of saying you're disrupting the meeting by one through six, and you've been warned. But for example, Your Honor, if an individual went to a Costa Mesa City Council meeting and said something that was deemed personal, impertinent, slanderous, we know from the dictionary, as well as some of the testimony from the city's witnesses, that those words prohibit critical or offensive speech. But they don't prohibit complimentary speech or laudatory speech. So if I went to a city council meeting and I made a comment to the mayor, I know your plot. I think that your motives are racist. I disagree with this political game that you're trying to get. Those are personal, critical, insolent, impertinent remarks. Merely by uttering those remarks under B1, that person can be found to be criminally liable. After the presiding officer calls the meeting to order and warns the speaker to desist from such conduct. So there would have to have been some utterance or action before the presiding officer then warns the speaker, don't do that anymore. And the speaker persists. But Your Honor, the warning and order to desist is exactly the point. The statement itself, just because it's critical of the elected official sitting on the dais, does not make it disruptive. And we not only see that in White versus City of Norwalk. Then why don't we just take out insolent? Would you be happy with that? I think that's Judge Smith's point, and it's not a bad one. The A says disorderly, insolent, or disruptive. And it sounds like you're OK with disorderly or disruptive. Sounds like this whole debate is over insolence. Actually, no, Your Honor, the whole debate. That wouldn't make it constitutionally OK for you? No, the whole debate is about the term remarks. I'm having a hard time understanding what it is that doesn't fit with the White case. You can ban, you can prohibit disorderly or disruptive behavior, correct? Behavior, activity that actually disrupts the meeting, that there's a material. That's all A is talking about. So long as it's applied that way, I think maybe it's just a debate over insolence, which I've never understood what it means. I think attorneys are sometimes, but I'm not sure. Can I ask you another question? What do we do with the constitutional principle that says on a facial challenge, if we can find any circumstances under which the ordinance can be appropriately applied, it survives a facial constitutionality challenge? Well, Your Honor, that standard applies to facial challenges generally, but it does not apply to facial challenges that are brought under the First Amendment. And the reason why is because the court has deemed that ordinances that are overbroad, that restrict people's speech, have a chilling effect on not only the person before the court, but also for people who are not before the court, who desire to express their criticisms to those who govern their city. So the standard is a more relaxed standard under the First Amendment. What is the standard? The standard, Your Honor, is that there has to be a substantial amount of this, of Realistic danger that the statute itself will significantly compromise. Isn't that the standard? Your Honor, the standard is that no set of circumstances, I'm sorry. You don't want to go there. No, no. That's not the way you want to get to the trap of my question. The court recognizes that there's a second type of facial challenge, where the standard is invalidated as overbroad if a substantial amount of its applications are unconstitutional, judged in relation to its statute's plainly legitimate speech. Here, under the ordinance, it chills not only Mr. Acosta's speech, but the speech of other people who wish to express their criticism or to their elected officials by merely making it unlawful for a person to just utter the remarks. And the remarks themselves cannot be disruptive. Under White, the person has to actually behave in a way that And that is not the way that the city admittedly construes it. It construes it very broadly, unlike the city of Norwalk. And therefore, this ordinance is unconstitutional on its face. Thank you. We'll hear from the city. Thank you. Good morning, Your Honors. May it please the court, Lois Boback for defendants and appellees. I guess I'll also focus on the facial validity of Section 2-61. I think that the biggest error in the argument made on behalf of Mr. Acosta is that it confuses a facial challenge with an as-applied challenge. The evidence that Mr. Acosta cites in the record with regard to the manner in which the city of Costa Mesa allegedly interprets or applies Section 2-61 is very narrow. It was presented at the trial court stage. And it doesn't say what Acosta asserts that it states. Well, just a minute. Before you get into that, maybe you could address the standard that I'm supposed to apply, because it seems to me that's what I'm really looking at is the standard here. And I'll be fair. I think I'm kind of with what Mr. Acosta has suggested. The standard isn't no set of circumstances at all. I think that the standard is twofold, Your Honor. I don't think that you just throw out the general standard that when a court reviews and orders... Well, city council versus the taxpayers for Vincent says throw it out. In fact, they said we have to look at whether there's a realistic danger that the statute itself will significantly compromise First Amendment's protections. That's what it says. Throw out that other standard. It doesn't apply here. I'm not familiar with the Vincent case, Your Honor. It wasn't cited in any of the briefs. The cases that were cited in the briefs suggested a twofold standard. One, that when you look at the facial validity of an ordinance, the court's role is to determine whether or not, based on the four corners of the document, it can be construed in a constitutional way. The other case, the overbreath case that was cited in the reply brief, suggested the standard that Ms. Helzer just mentioned, which is that a substantial amount of the applications are unconstitutional when judged against the constitutional applications. All right. So if we get past there, let's go to how does the A, with the way it is in A, how can insolent behavior be a disturbance? It depends on what the nature of the behavior is. So the fact that there can be some behavior that isn't a disturbance at all, is then the statute, shouldn't it be struck down? No, because the statute can be narrowly construed not to apply to pure speech. And in fact, if we're going to look at the manner in which it was applied, and we're going to look at the evidence that was admitted at trial, there was not at applied  We're at facial. I agree, Your Honor. From a facial standpoint, the the if the statute can be can be construed narrowly to avoid the unconstitutional application, then it should be. The types of cases where the Court has struck down a statute as overbroad involve cases where the the the potential application to constitutional speech is so significantly beyond the the type of speech that would be within the the constitutional right of the government. Well, if I look at the qualifiers in 261, it's disorderly, insolent, or disruptive. If I look at White, it's always disrupt, disturb, or impede. Or slanderous or personal remarks. Those are also words that Well, but it all has in White, it's all about disrupting, disturbing, or impeding. Yes. One sentence It doesn't have anything to do with just saying something. You've got to disrupt the meeting or disturb it or impede it. And I believe that that is a reasonable interpretation of Section 2. Of insolence. Well, of the whole ordinance, and if we have to strike out the word insolent, we have to strike out the word insolent. I think that we can do that, and that's certainly what the district court did in this case, was construe the statute in the same way that the Court construed the White statute. In White, the plaintiff made exactly the same argument as Mr. Acosta does here. The plaintiff in that case looked at one sentence in the ordinance that prohibited I'm not sure it said insolent, but personal, slanderous, profane remarks. And then the next sentence Well, but if you look very carefully at White, when you look at their ordinance, you can say what you want about the first part of the ordinance, but it all gets down to disrupting, disturbing, or impeding. And so does the Well, I don't think that does, because we've got two things, three different things that can get you in trouble here, and one of them is insolent. I read insolent. That's insultingly contemptuous, exhibiting boldness or infrontery. I do that on a continual basis to my wife. I'm having a tough time how that is disrupting. It's never disrupting to her. It might never be, Your Honor. And so there may never be a situation where the ordinance So then this is facially too broad. No, because the ordinance applies to, if the ordinance is construed to apply to behavior or conduct or speech that actually disrupts a meeting, then it doesn't matter what words you use to describe that conduct. It can be profanity, it can be slanderous, it can be profane, it can be insolent, it can be boisterous. If it actually disrupts the meeting, then it can be precluded under Section 2-6-1. If it doesn't actually disrupt the meeting, then it can't be precluded. Well, but then why didn't we say that a city couldn't define disturbance as anything it wanted? Yes. And so aren't we then prevented from saying insolence necessarily equates to disturbance? Yes. So therefore, the ordinance is facially too broad. No, because the ordinance doesn't equate insolence with disturbance. The statute says that if you are insolent in a way that is disturbing, then you can be removed from the council chambers. But it doesn't say if you are insolent, you can be removed. It has to actually disrupt the council meeting. Actually disrupt or have the potential of disrupting. In this case, the jury was instructed that it had to actually disrupt. If you had a little seminar for people and going in, and what can I say and what can't I, well, you can't say anything insolent that disrupts. That's what you want the interpretation to be, right? Yes. You cannot say anything insolent that actually disrupts the meeting. And somebody says, well, I don't want to call the mayor a racist because I think what they're doing is racist. So I'm going to call the mayor a racist. Can I do that? You say to that person, yeah, you can do that. You can call him a racist. Can I put the F word in front of it? Well, I don't know. Isn't that chilling speech? Just when you, I don't know. Depends on the tone of voice you're saying in, how nice you are, how you dress. And so this little primer on what you can do before the city council starts to have a chilling effect on free speech, wouldn't it? You have to take into consideration, when we're looking at 2-61, you have to take into consideration the nature of the city council meeting. This is not a traditional open public forum at which people have an opportunity to say whatever they want for however long they want. The council has. They get to say whatever they want. No, they don't. In three minutes. No, they're not allowed to speak. About the subject. About the subject. Right, whatever they want about the subject. It's a way of limiting the subject matter of speech. They're not allowed to come in and talk about whether or not the United States ought to get out of the U.N., or whether or not Germany ought to get off the Euro. They have to talk about matters that are within the subject matter jurisdiction of the council. So we're already limiting the nature of speech. Well, and then we write an ordinance to tell them they can't be parophane or impertinent. And it takes a lawyer to tell them, well, that's only in Part B, because in Part A, we tell them that that only pertains to something that is disorderly or disruptive. And then we say, well, is it really disorderly or disruptive or just potentially? I think it has to actually be disruptive. And if the ordinance is construed that way, then it's facially constitutional. Then you get into the question of whether Acosta's rights were violated in this particular case. Okay. Let me ask you one last question about this. When I read your Section 264 and your Section 260, it seems to me that those are narrowly tailored. They only talk about interrupting, delaying, or disturbing, nothing about insolence. That's correct, Your Honor. And so it seems to me you knew how to draft a really facially narrow statute, but you didn't. Well, I think we can't criticize the drafters of the ordinance for not thinking of every possible way that a court might construe the ordinance. I think you look at the ordinance as a whole and you determine what were they trying to accomplish. They were trying to make sure that they were able to accomplish their get done in a limited amount of time. I understand your argument, and I'm interrupting it because I know where you want to go, because I thought about that. But I said to myself, if in fact they're really just looking at disorderly or disruptive, why did they throw insolence into it when they knew in 264 they could write an ordinance that didn't talk anything about insolence? 260 doesn't talk anything about insolence. It only talks about disruption, delaying, disturbing. And I'm saying to myself, it looks to me 261 is too broad. When the current form, when 261 in its current form was enacted, the White decision had already been decided. And in White, the ordinance at issue stated in part, each person who addresses the counsel shall not make personal, impertinent, slanderous, or profane remarks. I would submit that impertinent is not so dissimilar from insolent, then that the difference in the choice of words is the reason. Impertinent is down in B, and insolent is up in A. That's a big difference. But again, it gets you have to take it back to the actually disrupting a city counsel meeting. I don't mean to do I don't mean to argue with the counsel, but I really think you're getting White in its perspective. When I read White, it talks about personal, impertinent, slanderous, or profane. I agree. But then it says, any person who makes such remarks or utters loud or threatening or personal or abusive language or engages in other disorderly conduct, and this is the important part, which disrupts, disturbs, or otherwise impedes. So all those remarks are of no essence unless it disrupts, disturbs, or impedes. So I looked at your statute. It doesn't say that. Well, now just a minute. In 261, you've got disorderly, insolent, or disruptive. It can't be just disorderly or disruptive. It can also be insolent. And then I can go down under B and find all kinds of examples of what it has to be. But it doesn't need to be disorderly or disruptive, which White did. The first sentence in White did not limit it. Well, I know because it had a limitation in the bottom. And just as 2-61b-6 has a limitation, that it has to be. But that's not the limitation. Yours is including but not limited to. That doesn't mean and you're limited by this. It means these are things that might be insolent. And again, I would submit that a reasonable way of interpreting the ordinance to withstand the facial constitutional challenge is to construe the ordinance in a manner like White that requires that before a person can be removed from the council chamber, that the disorderly, insolent, or disrupting action or behavior or speech has to substantially delay, interrupt, or disturb the proceedings of the council, which is what B-6 says. And if it's construed in that manner, then the statute is facially constitutional. And I think that certainly lawyers like to wordsmith, but the politicians who adopted this had White in front of them, knew that they could control disruptive behavior at city council, and using the word insolent instead of impertinent, using the subsections the way that they did as opposed to putting it all into one paragraph, I think that that's being overly analytical and doesn't do justice to what the legislature was trying to accomplish. I don't know. You wouldn't care if it was gone. No, Your Honor. Insolent can be stricken, and I don't think it would have any effect on the meaning of this statute. If I could with just the few seconds that I have left. When the Court looks at the Fourth Amendment issues, I think it's important to remember that that's an objective reasonableness standard, and I think that the reasonableness standard is that it's a reasonable cause to believe that a violation of Section 2-61 had occurred and, therefore, a reasonable cause to remove Mr. Acosta from the counsel. We're talking about the probable cause here, right? The probable cause to arrest and the excess of force. What about the excessive force? The excessive force claim also has to be judged from an objective reasonableness standard. I agree with that. But summary judgment for excessive force claims should be granted sparingly. You agree with that, don't you? Not necessarily, Your Honor. Smith v. Hammett says that. Yes. If the historical facts, though, are not in dispute. And in this case, the historical facts really aren't in dispute. The parties submitted a video. I think it's pretty much in dispute. In some of the briefs, they say he was kicked or punched. But then I reviewed the evidence, and I didn't see any kicking or punching. The inferences that can be drawn from the undisputed facts don't negate summary judgment. That's Hunt v. Bryant. In this case, the basic undisputed facts, the basic historical facts are not disputed. They're in the video, which is at page 494 of the excerpts of the record. If somebody comes in, if I come in and I say that it's so nice to be in front of a panel of five women and that, you know, it's really great that we were able to have oral argument in Dana Point, that doesn't create a triable issue of fact as to whether or not we are in Dana Point and I'm addressing a panel of five women. The evidence clearly establishes that we're in Pasadena and I'm before a panel of three men. Yeah, but you're not really focusing in on excessive force claims should be granted summary judgment sparingly. Claims nearly always require the jury to sift through these factual information and draw inferences therefrom and make credibility determinations. But when the underlying facts are not in dispute, then there's nothing for the jury to decide. Well, when one group says they were kicked and punched and the other group says they weren't and I review the evidence to try to figure out what it was, one of my questions was going to be where's the evidence he was kicked or punched. There isn't any. And that's my point. When at the summary judgment stage, there were individuals who came in and said that he was picked up and carried out of the room. The video shows that that is plainly wrong. But it doesn't you don't create a triable issue of fact by making a statement that is so contrary to the videotape evidence. If there was some question of what was shown on the video, okay, I would concede that perhaps there were questions. But there isn't. All the parties agree that what was shown on the video is essentially what happened in the chambers. There is a question about whether or not Mr. Acosta was put in a chokehold. At the very end of that video, Mr. Acosta turns back to the audience, and you can see the front of his shirt and you can see his chin. There is no dark arm across his neck. That evidence establishes as a matter of law, and the trial court was correct in determining that it established as a matter of law, that Mr. Acosta was not placed in a chokehold. Wasn't it the Scott case that the Supreme Court decided involving the police chase where they had, where the justices looked at the video of the chase? Wasn't that a summary judgment case where they found qualified immunity? It might very well have been, Your Honor. We've cited a number of cases. I don't think either one of you cited Scott to us. Scott D. Hurwicz? Yeah. I think it's Scott. The Georgia police chase case. There are a number of cases that are decided on summary judgment. But there was a video in that. That's what's, if I'm remembering the facts correctly. I don't recall that off the top of my head, Your Honor. Because I remember there was a dissent by Justice Stevens about deciding summary judgment by looking at the video. But that is the video that was presented with the motion for summary judgment.  And that's what we asked the district court to look at. That's why the majority in Scott said that's fair game. And it was appropriate in this case because that's what the parties told the district court to look at to determine whether or not there was any tribal issue of that. Do I understand your argument to be that it's, that no reasonable jury could find that there was excessive force employed in this case? Correct. When looking at it from an objective standpoint. You're right when you're saying when taking the evidence in the light most favorable to the other side. Correct. I think that's your simple argument. Yes. When it says sparingly used, say, well, this is one of those. It doesn't mean never. Sparingly. Yes. It didn't say never. Exactly. Okay. All right. Thank you very much, counsel. Thank you very much, Your Honor. Yes, of course. I'll give you a couple of minutes in rebuttal. Thank you, Your Honor. I just would like to address a few points. One is the argument that counsel made about confusing a facial challenge with an as-applied challenge. It's clear under this court's recent case in Comite de Jonaleros versus the City of Redondo Beach, which is the day labor case that challenged an ordinance, an anti-solicitation speech ordinance on its face, that the first thing that the court must do in determining the facial constitutionality of an ordinance is to determine what the intent of the legislature was in drafting it. And in doing that, you look at not only the plain language, but also how they construe it. So the construction is quite important into a facial challenge. The second issue I wanted to just briefly address is counsel's discussion about 261 being enacted after White. That's true. That's what the record shows. But if the legislature in Costa Mesa intended its ordinance to be like White's ordinance, then why didn't it write White's ordinance? It's significantly different in its plain language. It adds subsections, and it includes different words. So therefore, the court can deem that the legislature intended to do something different than what it did in White. And then lastly, Your Honor, just on the issue of qualified immunity and the summary judgment, here the district court was looking at two very different versions of the same fact. The police officers claimed that Acosta refused to leave the podium, that he began to argue with them, that he was removed immediately following the mayor's order that there was going to be a recess. They also characterized the officer's physical ejection as merely just being touches on the back of the head to guide him out of the room. But witnesses testifying for Mr. Acosta, and in fact, one of the officers who applied the choke hold, testified, Acosta's witnesses testified that he did not refuse to leave, that he questioned, merely questioned, why was his time up? Why was it being cut short? He indicated that he was going to leave on his own power, that they didn't need to touch him. And the issue about the physical injuries or what was physically done to Mr. Acosta came directly from Mr. Officer Anderson. And he says in the record at page 395 that he changed his hold to an upper body control hold, and when asked if he could describe the upper body control hold that he used, that he said, yeah, I used my arm and I placed it around his head and neck area. That is a choke hold. And lastly, with respect to the videotape, the videotape does not depict what happened, everything that happened at that city council meeting. At the time that Mr. Acosta is making his statement, there is one direction that that videotape is facing. It does not show what the crowd is doing or what anybody else in the audience is doing. And there were multiple. Absolutely, there were multiple tapes. And one of the other videotapes, which came from a handheld person in the audience, showed the incident at the podium, but it didn't show. But didn't the district court have all the videos before it on summary judgment? It had the videos, Your Honor, but none of the videos, either separately or together, showed exactly everything that was going on. As soon as the officers physically attacked Mr. Acosta and dragged him out of that meeting, there was not a videotape on every incident, on everything that happened during that time. And so that came from witness testimony and the police officer testimony. And when the district court reviewed that evidence, he made a determination that he was going to believe the officers and not Mr. Acosta. And clearly, those disputed facts were something that should have been left for the jury to decide. Thank you, Your Honor. Thank you both very much. The case was very well argued. We'll take a ten-minute recess and be back after the break. All rise.
judges: Benson, Tallman, Smith